<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

July 10, 2023

Nicholas M. Gaunce, Esq.
Sarah D. Boutros, Esq.
Eckert Seamans
Princeton Pike Corporate Center
2000 Lenox Drive
Suite 203
Lawrenceville, NJ 08648
*Counsel for Defendants CreditEd SRS, Inc., Smart Choice for You, Inc., John Milnes, and Sandy Lauer*

Nicholas Robert Doria, Esq.
Law Offices of Nicholas R. Doria, P.C.
21 Main Street
Suite 151
Hackensack, NJ 07601
*Counsel for Plaintiffs Sigma Solutions, Inc., Karen Ballinger, and Marcus Bamberg*

**<u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>**

    Re:    *Sigma Solutions, Inc., et al. v. CreditEd, Inc., et al.*
             **Civil Action No. 22-05831(SDW) (MAH)**

Counsel:

    Before this Court is Defendants CreditEd SRS, Inc. ("CreditEd"), Smart Choice for You, Inc. ("Smart Choice"), John Milnes ("Milnes"), and Sandy Lauer's ("Lauer"), (collectively "Defendants"), Motion to Dismiss, (D.E. 26), Plaintiffs Sigma Solutions, Inc. ("Sigma"), Karen Ballinger ("Ballinger"), and Marcus Bamberg's ("Bamberg"), (collectively "Plaintiffs") Complaint, (D.E. 1), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) or Rule 12(b)(6). This Court having considered the parties' submissions, and having reached its decision without oral argument pursuant to Rule 78, for the reasons discussed below, **GRANTS** Defendants' Motion to Dismiss.

**<u>BACKGROUND & PROCEDURAL HISTORY</u>**

    This action stems from a dispute concerning a business investment prompted by a long-term personal friendship between Plaintiff Ballinger and Defendant Mickman. (*See, e.g.*, D.E. 1

¶¶ 2, 3, 7, 9.) This action is brought by Sigma, a corporation formed and registered in the State of Delaware; Ballinger, Manager/Executive/CEO of Sigma and a citizen of the United Kingdom; and Bamberg, 100% owner of Sigma and a citizen of the United Kingdom. (*Id.* ¶¶ 12, 14–16.) Sigma is a "payday loan" company that issues "short-term cash loans" to persons who apply for such a service. (*Id.* ¶ 13.) CreditEd, a corporation formed and operating in New Jersey, "is a paid subscription-based service that assists subscribers with credit and debt counseling." (*Id.* ¶¶ 17–18.) Milnes, a resident of New Jersey, is the President and Owner of CreditEd. (*Id.* ¶¶ 19–20.) Smart Choice, a corporation formed in New Jersey by Milnes, is a business that was "created for banking purposes with Plaintiffs." (*Id.* ¶ 21.) Lauer is an employee of CreditEd.[1] (*Id.* ¶ 23.) Mickman is a citizen and resident of the United Kingdom. (*Id.* ¶ 22.)

In March of 2020, Ballinger and Bamberg sought to procure client leads in the United States by partnering with CreditEd, "which runs a [s]oftware and [s]ervice model for payday loan processors." (*Id.* ¶¶ 27–28.) Mickman—who Plaintiffs allege is a principal of CreditEd, and with whom Ballinger had a personal relationship for 20 years—negotiated with Plaintiffs to create a new corporate entity, Smart Choice, to "facilitate the transaction." (*Id.* ¶¶ 28–30.) Sigma agreed to invest $680,000 in CreditEd to facilitate the deal, which included $260,000 of cash investment, $120,000 of "foregone salaries," and $300,000, which Plaintiffs allege Mickman misappropriated by taking salary payments in excess of that to which he was entitled. (*Id.* ¶¶ 31, 47–51.) Ballinger and Bamberg expected to become joint 100% owners (50%/50%) of Smart Choice. (*Id.* ¶ 32.)

In April of 2020, Mickman told Ballinger that Smart Choice would be formed and incorporated, provided web addresses, and confirmed that bank accounts would be opened once available, but, in the meantime, business would be processed through Credit Ed. (*Id.* ¶¶ 33–34.) CreditEd was to "act[] as a middleman" between Sigma and Smart Choice, cultivate customer relationships, and generate income for Sigma using the capital provided. (*Id.* ¶ 35.)

Throughout 2020, Ballinger asked Milnes and Mickman about the status of the Smart Choice bank accounts, which were not opened. (*Id.* ¶ 37.) Mickman told Ballinger that banks were delayed in opening accounts and said that Milnes had trouble getting payment processor agreements for Smart Choice. (*Id.* ¶ 38.)

Over a year-long period, Sigma invested funds to keep CreditEd in business, spending between $800,000 to $1,000,000, including $260,000 cash and additional funds for marketing costs, salaries, overhead, and payroll expenses. (*Id.* ¶¶ 10, 43–44.) Sigma took on debt obligations due to Mickman's and Milnes' representations about the business income and expenditures. (*Id.* ¶¶ 45–46.) Sigma paid the salaries of Milnes and Lauer. (*Id.* ¶40.) Mickman, who initially agreed to take a salary of $1,000 per week, took a $5,000 per week salary, which increased to $7,000 per week at some point. (*Id.* ¶¶ 41, 47, 50.) Ballinger and Bamberg personally went without salary payments of "almost $120,000 . . . over the course of a three-month period . . . , in an attempt to reduce business expenses and facilitate the growth of the new partnership." (*Id.* ¶ 49.)

Sometime thereafter, Ballinger discovered that CreditEd was not as profitable as Mickman had originally claimed, and determined that during a two-year period, Mickman purportedly "misappropriated at least $300,000 in corporate funds." (*Id.* ¶¶ 42, 45, 51.)

---

[1] The Complaint does not specify Lauer's state or country of residence.

2

On October 1, 2022, Plaintiffs filed an eight-count Complaint, including the following causes of action, each against all Defendants: action for dissolution (Count I); action for accounting (Count II); breach of fiduciary duty (Count III); negligence (Count IV); fraud in the inducement (Count V); imposition of a constructive trust (Count VI); injunctive relief (Count VII); and punitive damages (Count VIII). (*Id.* ¶¶ 53–97.)

On October 24, 2022, Plaintiffs filed an application for an order to show cause for a preliminary injunction and imposition of a constructive trust over CreditEd's monetary assets. (D.E. 13-1 at 4.) On November 10, 2022, this Court held a hearing concerning the order to show cause application, and subsequently denied Plaintiffs' application. (D.E. 21; D.E. 22.)

On December 9, 2023., Defendants CreditEd, Milnes, and Lauer filed the instant Motion to Dismiss. (D.E. 26.) The parties thereafter completed timely briefing. (D.E. 29; D.E. 30.)

**DISCUSSION**

A.

Subject matter jurisdiction establishes a court's "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Subject matter jurisdiction exists either by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332 or federal question jurisdiction pursuant to 28 U.S.C. § 1331. "To establish diversity jurisdiction . . ., the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00." *Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. App'x 289, 292 (3d Cir. 2010). In contrast, federal question jurisdiction "arises when federal law creates the cause of action, or where the complaint, on its face, poses a federal question." *Id.*

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) by challenging jurisdiction facially or factually. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action (Schering Plough)*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke subject matter jurisdiction of the court because, for example, . . . there is no indication of a diversity of citizenship among the parties." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (alterations in original) (quoting *Const. Party of Pa.*, 757 F.3d at 358). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa.*, 757 F.3d at 358 (citing *Schering Plough.*, 678 F.3d at 243)). Conversely, "[a] factual attack . . .is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *GBForefront, L.P.*, 888 F.3d at 35 (quoting *Const. Party of Pa.*, 757 F.3d at 358). When considering a factual attack, a court "may look beyond the pleadings to ascertain the facts." *Id.* (quoting *Const. Party of Pa.*, 757 F.3d at 358).

B.

This Court must first consider whether Plaintiffs have established subject matter jurisdiction. Defendants contend that "complete diversity between the parties does not exist—both Plaintiffs and Defendants include parties who are citizens of the United Kingdom." (D.E. 26-1 at 10 (citing D.E. 1 ¶¶ 16, 22).) Plaintiffs maintain that although Plaintiffs Ballinger and

Bamberg are named in the Complaint and are both citizens of the United Kingdom, "they appear in this action solely in their capacity [sic] as corporate officers of Plaintiff Sigma, a Delaware Corporation," and "their domicile [sic] should follow the corporation (Delaware), not their individual domicile (United Kingdom)." (D.E. 29 at 8.)[2] Defendants counter that "Plaintiffs do not cite any case law to support" the contention that "a corporate officer's domicile should follow the domicile of the corporation." (D.E. 30 at 6.) Furthermore, Defendants argue, the Complaint alleges financial injuries to the individual Plaintiffs in their personal capacities for purported salary payments they went without. (*Id.* at 7, n.2.)

> Federal District Courts have jurisdiction over
>
> > all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> >
> > . . .
> >
> > (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
> >
> > . . . .

28 U.S.C. § 1332 (a)(2). Of import, "[t]he citizenship of a natural person is the state where that person is domiciled. The citizenship of a corporation is both its state of incorporation and the state of its principal place of business." *GBForefront, L.P.*, 888 F.3d at 34 (citing *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 419).

The burden to establish subject matter jurisdiction rests with Plaintiffs, who, in this instance, have not met that burden. *See Schneller*, 387 Fed. App'x at 292. Plaintiffs do not dispute that Ballinger and Bamberg are citizens of the United Kingdom, as is Defendant Mickman, and Plaintiffs do not contend that they are domiciled elsewhere. In an attempt to establish diversity, Plaintiffs attribute the corporate citizenship of Plaintiff Sigma to Plaintiffs Ballinger and Bamberg, but cite no case law or controlling precedent that supports attributing Sigma's domicile to the individually named Plaintiffs. (*See* D.E. 29 at 8–9.) Critically, the Complaint also fails to include factual information regarding Sigma's principal place of business. *See Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 515 (D.N.J. 2000) ("Corporate entities have dual citizenship for purposes of diversity and thus plaintiffs must affirmatively plead *both* the state of incorporation and the corporation's principal place of business." (emphasis added) (citing 28 U.S.C. § 1332(c)). Plaintiffs have failed to affirmatively plead facts indicating Sigma's principal place of business, and therefore have failed to overcome Defendants' facial attack.

Moreover, the Complaint inextricably intertwines allegations of wrongdoing against Ballinger and Bamberg personally, as well as wrongdoing against the corporate Plaintiff, thereby implicating a factual attack. The Complaint alleges that a personal relationship between Ballinger and Mickman was the basis for the alleged fraud in the inducement, puts forth that all three

---

[2] Citations of page numbers in the briefs cited in this Opinion refer to the D.E. filing page numbers, not to each document's original page numbers.

"Plaintiffs have been harmed and damaged," and differentiates the "Plaintiffs and the businesses identified herein," thereby creating a distinction between the individual Plaintiffs and the corporate Plaintiff.  (D.E. 1 ¶¶ 2–3, 5, 7, 9, 11, 28–31, 37, 40, 49, 52, 58, 62, 65, 69–70, 75, 76–81, 91, 93, and 97.)  Ballinger and Bamberg specifically allege injuries they personally suffered—$120,000 in foregone salaries—for which they seek redress.  (*See* D.E. 1 ¶¶ 31, 49, 97.)  Because the diversity "requirement pertains to suits between aliens as well as to suits between citizens," and because here we have alien Plaintiffs and an alien Defendant that all reside in the United Kingdom, Plaintiffs cannot establish diversity and therefore have not established this Court's subject matter jurisdiction over the claims.  *Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980) (citations omitted).

While Plaintiffs assert that the Complaint "could easily be amended to delete reference to Ballinger and Bamberg in their corporate capacities," (D.E. 29 at 9), it is important to note that "the jurisdiction of the Court depends upon the state of things at the time of the action brought," *Grupo Dataflux v. Atlas Glob. Grp., L.P. et al.*, 541 U.S. 567, 570–71 (2004) (quoting *Mollan v. Torrance*, 22 U.S. 537, 538 (1824)).  Courts adhere to the "time of filing" rule and "measure[] all challenges to subject [] matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing."  *Grupo Dataflux, L.P.*, 541 U.S. at, 570–71.  In other words, "jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit."  *Id.* at 571 (quoting *Anderson v. Watt*, 138 U.S. 694, 708 (1891)).[3]

**CONCLUSION**

Defendants' Motion to Dismiss is **GRANTED**.  An appropriate order follows.

    /s/ Susan D. Wigenton    
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Michael A. Hammer, U.S.M.J.

---

[3] Without Plaintiffs overcoming the challenge to subject matter jurisdiction, this Court cannot examine the merits of Defendants' Rule 12(b)(6) arguments.  *See GBForefront, L.P.*, 888 F.3d at 34 (citing *Zambelli Fireworks Mfg. Co.*, 592 F.3d at, 418) ("It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case, and, as its name indicates, jurisdiction based on diversity of citizenship requires that opposing parties be citizens of diverse states.").